**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW ERIC ZUPKO,<br><br>Plaintiff,<br><br>v.<br><br>OHIO ATTORNEY GENERAL,<br><br>Defendant. | ) | Case No. 1:25-cv-1296<br><br>Judge J. Philip Calabrese<br><br>Magistrate Judge<br>Jennifer Dowdell Armstrong |

**OPINION AND ORDER**

Plaintiff Andrew Eric Zupko filed this action without a lawyer against the Ohio Attorney General in his official capacity for declaratory and injunctive relief arising from his registration as a sex offender under Ohio law. Specifically, Plaintiff contends that Ohio's sex-offender registration law violates the federal and Ohio Constitutions as applied to him. Previously, the Magistrate Judge made certain rulings to which Plaintiff objects. Defendant moves to dismiss. For the reasons that follow, the Court **OVERULES** Plaintiff's objections, **DENIES AS MOOT** Plaintiff's motion to stay, and **GRANTS IN PART** Defendant's motion to dismiss.

**STATEMENT OF FACTS**

Construing the facts alleged in the first amended complaint in Plaintiff's favor, as the non-moving party, the complaint alleges the following facts.

In 2013, Plaintiff Andrew Zupko pled guilty to a "non-violent, non-contact federal offense in the Southern District of New York." (ECF No. 13, ¶ 9, PageID #78.) Specifically, Mr. Zupko pled guilty to receipt and distribution of child pornography in

violation of 18 U.S.C. § 2252A(a)(2) & (b)(1). *See United States v. Zupko*, No.: 7:13-cr-00132 (S.D.N.Y. Oct. 1, 2013). As part of the change-of-plea colloquy, the judge confirmed that Mr. Zupko understood that his conviction required registration as a sex offender and restrictions on his residence and employment. (ECF No. 13, ¶ 19, PageID #81.) The judge did not advise Mr. Zupko that registration required "public internet dissemination, community notification, or the lifelong public branding that would flow from the State of Ohio's separate scheme." (*Id.*; *see also id.*, ¶ 20.)

As a result of his guilty plea, Mr. Zupko was sentenced to a 120-month term of incarceration followed by a ten-year term of supervised release. *Id.* at 2. One condition of Mr. Zupko's supervised release requires compliance "with the requirements of the Sex Offender Registration and Notification Act," also known as SORNA. *Id.* at 3. This condition also requires Mr. Zupko to comply with the requirements of "any state sex offender registration agency in which he or she resides . . . ." *Id.*

After Mr. Zupko's release from incarceration, he began his supervised release where he "exceeded every expectation." (*Id*, ¶ 10, PageID # 78.) Mr. Zupko did have "two minor technical violations in 2023" for "failing to report a traffic stop within 72 hours" and "asserting his Fourth Amendment rights during a hypothetical discussion about phone searches without reasonable suspicion." (*Id.*) Mr. Zupko's violations were resolved with "continued supervision and modestly elevated conditions, reflecting his overall low risk, compliance, and the probation office's acknowledgement of stable housing, employment, and treatment progress." (*Id.*)

Mr. Zupko's supervising officers have "recogniz[ed] his genuine transformation" and have "progressively eased his conditions, a decision reflecting their professional assessment of his progress and low risk." (*Id.*)

While on supervised release Mr. Zupko moved to Cuyahoga County, Ohio. (*Id.*, ¶ 8, PageID # 78.) Ohio law required him to register as a Tier II sex offender. Ohio Rev. Code § 2950.04(A)(2). While residing in Cuyahoga County, Mr. Zupko "lived in an apartment complex where he was a model tenant" for several years. (ECF No. 13, ¶ 11, PageID #79.) Previously, Mr. Zupko disclosed his status as a registered sex offender to his landlord, and his landlord continued to lease him the apartment. (*Id.*) Later, that apartment was sold. (*Id.*, ¶ 12, PageID #79.) The new management company added to the lease a clause banning "any registered person 'regardless of proximity.'" (*Id.*)

Mr. Zupko alleges that, "[b]ased solely on [his] presence on Ohio's public registry" for sex offenders, the landlord began eviction proceedings. (*Id.*, ¶ 13, PageID #79.) His landlord learned of his status "because Ohio broadcasts registry information online for any private actor to use." (*Id.*) Further, Mr. Zupko alleges that, "[f]aced with fighting an illegal eviction while risking immediate homelessness," he was "forced to settle." (*Id.*, ¶ 14, PageID #79.) At the time he filed this lawsuit, Mr. Zupko claims that, because of Ohio's public registry, he is unable to find new housing as multiple landlords have rejected his applications "after finding his status on Ohio's registry," and the "public dissemination that caused his eviction now prevents him from securing any stable housing." (*Id.*, ¶ 15, PageID #80.)

## STATEMENT OF THE CASE

Contending that Ohio's sex-offender registry violates the Constitution, Plaintiff sued the Ohio Attorney General in his official capacity for declaratory and injunctive relief. During pretrial proceedings, the Magistrate Judge denied Plaintiff's motion to proceed under a pseudonym and his motion to seal his declaration in support of his motion for a temporary restraining order and preliminary injunction. (ECF No. 9.) Plaintiff objects to that Order. (ECF No. 10.) During the pendency of his objection, Plaintiff sought to stay the Magistrate Judge's ruling. (*Id.*, PageID #52.)

Plaintiff filed a first amended complaint (ECF No. 13), which asserts seven causes of action. First, Plaintiff alleges that Ohio's sex offender registration system violates due process and the separation of powers by allowing a State to modify a federal sentence. (*Id.*, ¶¶ 18–23, PageID #80–83.) In this claim, Plaintiff emphasizes that he does not challenge the constitutionality of SORNA itself, instead focusing on the authority of a State to add punishment on top of a federal sentence. (*Id.*, ¶ 18, PageID #81.) Second, Plaintiff alleges a violation of the Supremacy Clause, specifically maintaining that Ohio's sex offender registration requirements stand as a direct obstacle to the objectives of federal supervised release that Congress established. (*Id.*, ¶¶ 24–27, PageID #83–84.) Third, Plaintiff alleges violations of procedural and substantive due process. (*Id.*, ¶¶ 28–32, PageID #84–85.) Fourth, Plaintiff claims a violation of the Eighth Amendment. (*Id.*, ¶¶ 33–34, PageID #85–86.) Fifth, Plaintiff alleges a violation of the Ohio Constitution. (*Id.*, ¶¶ 35–39,

PageID #86–87.) Sixth, Plaintiff asserts violations of the Fourth and Fourteenth Amendments. (*Id.*, ¶¶ 40–45, PageID #87–88.) Seventh, Plaintiff alleges violations of the First Amendment (in the form of compelled speech), the Ninth Amendment (invasion of privacy), and the Fourteenth Amendment (usurpation of judicial power). (*Id.*, ¶¶ 46–50, PageID #88–91.)

Defendant moves to dismiss. (ECF No. 17.) After that motion, and Plaintiff's objections to the Magistrate Judge's Order were fully brief, this case was re-assigned to the undersigned when the previous judge recused. (ECF No. 26.)

**OBJECTIONS**

Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may "hear and determine any pretrial matter pending before the court," with certain exceptions not relevant here. Under this statute, a judge "may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a) ("The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."). Accordingly, an order of a magistrate judge does not receive de novo review, as does a report and recommendation under 28 U.S.C. § 636(b)(1)(B). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court . . . is left with the definite and firm conviction that a mistake has been committed." *Hagaman v. Commissioner*, 958 F.2d 684, 690 (6th Cir. 1992) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 398 (1948)). Plaintiff objects to the Magistrate

Judge's denial of (1) his motion to proceed using a pseudonym; and (2) his motion to seal his declaration in support of his motion for a temporary restraining order and preliminary injunction. (ECF No. 10.)

### A. Proceeding under a Pseudonym

A motion to proceed by pseudonym invites a court to weigh a plaintiff's privacy interests against the strong presumption favoring open judicial proceedings. *See Doe v. Porter,* 370 F.3d 558, 560 (6th Cir. 2004); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). Generally, "[t]he public has a right to know who the parties are." *Signature Mgmt. Team, LLC v. Doe*, 323 F. Supp. 3d 954, 959 (E.D. Mich. 2018) (citing *Signature Mgmt. Team*, *LLC v. Doe*, 876 F.3d 831, 838 (6th Cir. 2017)). But exceptional circumstances may override that interest.

"Proceeding pseudonymously is the exception rather than the rule, and a plaintiff faces a heavy burden to avoid her obligation under the rules of civil procedure to disclose her identity." *Doe v. University of Akron*, No. 5:15-cv-2309, 2016 WL 4520512, at *2 (N.D. Ohio Feb. 3, 2016) (internal quotations omitted). The Sixth Circuit identifies four considerations to guide this determination:

> (1) Whether the plaintiffs seeking anonymity are suing to challenge governmental activity;
>
> (2) Whether the prosecution of the suit will compel the plaintiffs to disclose information "of the utmost intimacy";
>
> (3) Whether the litigation compels plaintiffs to disclose an intention to violate the law, thereby risking criminal prosecution; and
>
> (4) Whether the plaintiffs are children.

*Porter*, 370 F.3d at 560 (quoting *Doe v. Stegall*, 623 F.2d 180, 185–86 (5th Cir. 1981)). Courts also consider whether allowing a plaintiff to proceed by pseudonym would force a defendant to litigate with insufficient information to defend its case. *Citizens for a Strong Ohio v. Marsh*, 123 F. App'x 630, 636 (6th Cir. 2005).

Here, the Magistrate Judge identified the controlling law and analyzed each factor. (ECF No. 9, PageID #44–46.) She concluded that the third and fourth factors do not apply and that the other two point in each direction. (*Id.*, PageID #45.) The first she said supports Mr. Zupko, while the second does not because he was required to register, creating a public record. (*Id.*) After considering Mr. Zupko's other arguments, the Magistrate Judge determined that the law did not favor allowing him to proceed pseudonymously. (*Id.*, PageID #46.)

Plaintiff objects to this Order, arguing that it misapplied each factor under *Porter*. (ECF No. 10, PageID #50–51; ECF No. 16, PageID #111.) Also, he argues that the balance of considerations favor use of a pseudonym in this case. (ECF No. 10, PageID #51.) Under the deferential standard of review, the Court cannot say that the Magistrate Judge's Order is clearly erroneous or contrary to law. Indeed, she applied the controlling legal principles and reached a judgment consistent with them. In fact, the Court is hard pressed to see how litigating under a pseudonym is appropriate where Mr. Zupko's status is publicly available in the sex offender registry. For these reasons, the Court determines that there was no clear error in the Magistrate Judge's denial of Plaintiff's motion to proceed under pseudonym and

that her Order is not contrary to law. Therefore, the Court **OVERRULES** this objection.

### B. Denial of Motion to Seal Declaration

On appeal, a district court's decision to seal court records is reviewed for an abuse of discretion. *Klingenberg v. Federal Home Loan Mortg. Co.*, 658 F. App'x 202, 207 (6th Cir. 2016) (citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.,* 825 F.3d 299, 306 (6th Cir. 2016)). But in the sealing context, "the district court's decision is not accorded the deference that standard normally brings." *Id.* To properly exercise its discretion, district courts must "set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Shane Grp.*, 825 F.3d at 306 (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176 (6th Cir. 1983)).

District courts must weigh, on the one hand, the parties' interest in keep information confidential, and on the other, the public's strong interest in "obtaining the information contained in the court record." *Shane Grp.*, 825 F.3d at 305 (citation and quotation omitted). "The courts have long recognized . . . 'a strong presumption in favor of openness' to court records." *Id.* (quoting *Brown & Williamson*, 701 F.2d at 1179).

In *Shane Group*, the Sixth Circuit distinguished between discovery, which is typically governed by a protective order, and adjudicatory information or documents, which are entered into the court record and are presumptively open to the public. By their nature, adjudicatory records typically concern the issues in dispute and draw a strong public interest about "whether a right does or does not exist, or a statute is or is not constitutional" or sometimes about "the conduct giving rise to the case." *Shane*

*Grp.*, 825 F.3d at 305. In each instance, "the public has an interest in ascertaining what evidence and records" a court relies on in reaching its decision. *Id.*

Overcoming the burden to justify nondisclosure is "a heavy one: 'Only the most compelling reasons can justify non-disclosure of judicial records.'" *Id.* (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983)). The greater the public interest, the greater the burden to justify a seal. *See id.* In civil litigation, the most common categories of information that overcome this burden include "trade secrets, information covered by a recognized privilege (such as attorney-client privilege), and information required by statute to remain in confidence (such as the name of a minor victim of a sexual assault)." *Id.* at 308.

To demonstrate that sealing is necessary, the party seeking confidentiality must "analyze, in detail, document by document, the propriety of secrecy, providing reasons and legal citations" that support seal. *Id.* at 305–06 (citation and quotation omitted). Therefore, it is incumbent on the Court to review each document and the legal rationales that the parties offer, and "set forth specific findings and conclusions 'which justify nondisclosure to the public.'" *Id.* at 306 (quoting *Brown & Williamson*, 710 F.2d at 1176).

Here, Plaintiff moved to seal the declaration he filed in support of his motion for a temporary restraining order and preliminary injunction. In that declaration, Mr. Zupko disclosed his (1) his employment status; (2) his housing situation; and (3) the details of the eviction case pending against him in State court. After identifying the governing legal principles, the Magistrate Judge denied Plaintiff's

motion to place this information under seal. (ECF No. 9, PageID #47–48.) In doing so, she reasoned that the eviction proceeding was already a matter of public record and that "general references" to employment and housing status failed to "meet the stringent standards for sealing under Sixth Circuit precedent." (*Id.*, PageID #47.)

Plaintiff objects to this Order. (ECF No. 10.) He argues that the information at issue is not fully public and involves sensitive personal details about his life. (*Id.*, PageID #51.) Again, the standard of review dictates the outcome. In light of the strong presumption under the law in favor of open courts and public access to information that informs court rulings, the Court cannot say that the Magistrate Judge's Order is clearly erroneous or contrary to law. Indeed, information of the sort at issue that bears on the parties' arguments about the lawfulness of a statute or its consequences counts as presumptively public, and strongly so. *Shane Grp.*, 825 F.3d at 305. Nor does the information at issue fall within the types of information typically protected against public disclosure in civil litigation. *Id.* at 308.

For these reasons, the Court determines that there was no clear error in the Magistrate Judge's denial of Plaintiff's motion to seal his declaration. Accordingly, the Court **OVERRULES** this objection. (ECF No. 10.)

### C. Motion to Stay Enforcement Pending Review

As part of his objections, Plaintiff moved to stay enforcement of the Magistrate Judge's Order. (ECF No. 10, PageID #52.) He did so to allow him to continue to litigate pseudonymously and to leave his declaration under seal pending resolution of his objections. Because the Court has now addressed those objections, the Court **DENIES AS MOOT** Plaintiff's motion for a stay. (ECF No. 10.)

## ANALYSIS

In any civil action, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

When analyzing a complaint under this standard, courts construe factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a pleading must offer more than mere "labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations[.]" *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *See Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were "not well-pleaded[,]" "their conclusory nature 'disentitles them to the presumption of truth'"). Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or made part of the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

## I. Legal Background

In the Southern District of New York, Mr. Zupko pled guilty to one count of receipt and distribution of child pornography on October 1, 2013. In 2006, Congress enacted the Adam Walsh Child Protection and Safety Act, Pub. L. 109-248, 120 Stat. 587 (2006) (codified at 34 U.S.C. § 20911 *et seq.*). This Act is also known as the Sex Offender Registration and Notification Act, or SORNA for short. As a part of federal sentencing, Congress mandates that the court order registration under SORNA and compliance with that Act as an explicit condition of supervised release. 18 U.S.C. § 3583(d)

SORNA "establishes a comprehensive national system for the registration of [sex] offenders." 34 U.S.C. § 20901. Among other things, the Act mandates that a sex offender "shall register . . . in each jurisdiction where the offender resides." *Id.* § 20913(a). In the statute, Congress required each State to "make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." *Id.* § 20920(a). Further, federal law directs the Attorney General to maintain a website making "relevant information for each sex offender" public in a reasonably usable and searchable format. *Id.* § 20922. As relevant here, no material amendments to the operative provisions of that statute occurred by the time of Mr. Zupko's sentencing, his release from federal prison, or the date of his move to Ohio.

Under 34 U.S.C. § 20911(3)(b)(iii), Mr. Zupko is a Tier II sex offender because his offense involved distribution of child pornography. Ohio law requires a convicted sex offender to register with the local sheriff. Ohio Rev. Code § 2950.04(A)(2). As a Tier II sex offender, Mr. Zupko must verify his residence and place of employment every 180 days for 25 years, among other restrictions. Ohio Rev. Code § 2950.06(B)(2). Ohio law requires the Ohio Attorney General to "establish and maintain a state registry of sex offenders" through the Bureau of Criminal Identification and Investigation. *Id.* § 2950.13(A)(1). BCI shall "establish and operate on the internet a sex offender and child-victim offender database that contains information for every [sex] offender" and that "is a public record open for inspection" and "searchable" by offender . . . name, by county, by zip code, and by school district." *Id.* § 2950.13(A)(11).

## II. Federal Constitutional Challenges

Against this background, Plaintiff advances six federal constitutional challenges and advances one claim under the Ohio Constitution. Rather than proceeding count-by-count through the first amended complaint, the Court groups the causes of action according to the substantive challenges that Plaintiff brings. In doing so, the Court endeavors to avoid duplication of the legal arguments across the various causes of action.

### II.A. Federalism and the Supremacy Clause

The first amended complaint makes clear that Plaintiff challenges the lawfulness of Ohio's registration requirements for sex offenders, specifically maintaining that the State imposes additional requirements not fixed as part of his federal sentence. In other words, he claims that the State has modified the terms of his federal sentence through its registration requirements. By doing so, Plaintiff contends that Ohio violates principles of federalism and the separation of powers embedded in the nation's constitutional structure.

The express language of SORNA disposes of Plaintiff's argument. The amended complaint overlooks the fact that the statutory text that Congress enacted requires a sex offender, convicted under federal law, to register in his State of residence. 34 U.S.C. § 20913(a). A sentencing judge must order registration under SORNA and compliance with that Act as an express condition of supervised release. 18 U.S.C. § 3583(d). Further, SORNA mandates each State to "make available on the Internet, in a manner that is readily accessible to all jurisdictions and to the public, all information about each sex offender in the registry." 34 U.S.C. § 20920(a).

These statutory requirements demonstrate that the public availability of his conviction and status as a sex offender about which Mr. Zupko complains flow directly from federal law and the consequences federal law places on his conviction. Ohio does not materially alter or vary from these federal requirements. That is, the State does not make meaningfully more information publicly available than what Congress dictated. Contrary to Plaintiff's claim, the judgment of conviction in the Southern District of New York expressly ordered him to comply with SORNA "or any state sex offender registration agency in which he or she resides." *United States v. Zupko*, No. 7:13-cr-00132, at 3. That part of the judgment was not a delegation of any kind. Instead, consistent with SORNA, it expressly made compliance with State registration requirements a condition of Mr. Zupko's supervised release.

Additionally, Plaintiff argues that Ohio's registration scheme for sex offenders stands as a direct obstacle to the congressional objectives of supervised release expressed in 18 U.S.C. § 3583. It is difficult to see how a State sex offender registration scheme can frustrate the purpose of supervised release where Congress has mandated State registration as a part of SORNA or where Congress, and the State of Ohio, provide for public searchability of the registration database. In short, there is no conflict between federal and Ohio law when it comes to sex offender registration and the public's access to such information.

**II.B. Substantive and Procedural Due Process**

Circuit precedent forecloses Plaintiff's procedural due process claim. In *Doe v. DeWine*, 910 F.3d 842, 852 (6th Cir. 2018), the Sixth Circuit rejected a procedural due process challenge to Ohio's sex offender registry, concluding that "due process does

not require that [the plaintiff] be granted a hearing to challenge her classification." *Id.* at 852. Ohio's registration scheme does not base an offender's classification on a determination of current dangerousness. Instead, the fact of conviction alone determines the tier and registration requirements. *See* Ohio Rev. Code § 2950.01(E), (F) & (G). Accordingly, the registration upon conviction does not implicate a liberty interest that entitles a person to a hearing. *See Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 7–8 (2003); *Doe*, 910 F.3d at 852.

Substantive due process protects fundamental rights that are "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Doe v. Michigan Dep't of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). When considering Michigan's sex offender registration requirements, the Sixth Circuit concluded that the rights of privacy and nondisclosure of private information at stake in a registration scheme were not of constitutional dimension. *Id.* at 500. The Court sees no way to distinguish the Ohio scheme at issue from this precedent, and Plaintiff offers none. Therefore, this claim fails as a matter of law too, along with Plaintiff's parallel claim under the Ninth Amendment.

**II.C. Remaining Challenges**

Plaintiff asserts an Eighth Amendment violation. Without question, registration requirements have a punitive dimension. *See, e.g.*, *Doe v. Snyder*, 834 F.3d 696, 701–05 (6th Cir. 2016). But Ohio's stated purpose for the registration and notification requirements is "to protect the safety and general welfare of the people of this state." Ohio Rev. Code § 2950.02(B). And the public's access to registry

information allows members of the public to make their own judgments and protect themselves through their own efforts without reliance on governmental policing, which might be more intrusive. Plaintiff relies on the strain of Eighth Amendment jurisprudence that finds a constitutional violation based on evolving standards of decency. In the face of decisions rejecting Eighth Amendment challenges to lifetime registration, *see, e.g.*, *Kitterman v. City of Belleville*, 66 F.4th 1084, 1092 (7th Cir. 2023); *United States v. Juvenile Male*, 670 F.3d 999, 1010 (9th Cir. 2012), the Court fails to discern a basis for an Eighth Amendment challenge here, where Mr. Zupko faces registration for a definite term of many fewer years.

Also, Plaintiff alleges a violation of the Fourth Amendment. But no search or seizure within the meaning of the Fourth Amendment occurred on the facts as Mr. Zupko alleges them. To argue otherwise, he points to *Grady v. North Carolina*, 575 U.S. 306 (2015) (per curiam). There, a State court ordered a recidivist sex offender to participate in satellite-based location monitoring by wearing a tracking device at all times for the rest of his life. The State courts rejected his challenges under the Fourth Amendment. The Supreme Court held that the type of tracking at issue constituted a search within the meaning of the Fourth Amendment and remanded for further proceedings in the State courts to determine the reasonableness of that search. *Id.* at 308 & 311. But nothing about *Grady* or its reasoning or the decisions of the Supreme Court more broadly, whether in *Carpenter v. United States*, 585 U.S. 286 (2018), or *Chatrie v. United States*, 609 U.S. ___, 146 S. Ct. 2193 (2026), suggests that a search occurred here by virtue of placing Mr. Zupko's fact of conviction

and other personal details that he might rather keep private were placed in a publicly accessible database.

As for the First Amendment, Plaintiff alleges that Ohio's registration scheme compels him to speak. But the registration requirements do not compel speech as much as mandate regulatory disclosures of the sort long recognized as permissible under the First Amendment. Plaintiff cites no authority finding that a registration requirement compels speech or otherwise violates the First Amendment. Making registration under State law one condition of supervised release imposed as part of his federal sentence pursuant to federal laws that Congress enacted disposes of any objection Mr. Zupko makes to registration. Indeed, if his objection sufficed to state a claim under the First Amendment, every sex offender would have such a claim. Nothing about the facts and circumstances Plaintiff alleges raises his as-applied challenge above the level of speculation.

*        *        *

After the close of briefing, Plaintiff submitted a notice of supplemental authority, identifying the Supreme Court's decision in *Ellingburg v. United States*, 607 U.S. 163 (2026). There, the Supreme Court held that the Mandatory Victims Restitution Act of 1996 constitutes criminal punishment for purposes of the *Ex Post Facto* Clause. *Id.* at 167. Formally, this decision does not apply to Ohio's sex offender registry or to any aspect of Mr. Zupko's conviction and sentence that he challenges in this litigation. Nor is any aspect of Mr. Zupko's registration requirement subject to a challenge under the *Ex Post Facto* Clause.

## III. Ohio Constitution

That leaves Plaintiff's fifth cause of action, which asserts a violation of the Ohio Constitution. (ECF No. 13, ¶¶ 35–39, PageID #86–87.) Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over this claim. Under federal law "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462–63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Because the Court dismisses all of Plaintiff's federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiff's State-law claims and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiff's right to pursue the remaining claim in State court, *see* 28 U.S.C. § 1367(c)(3). "[G]enerally 'when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the [S]tate law claims." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).

Based on its review of the record, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim under the Ohio Constitution for two reasons. First, the Court has dismissed all federal claims such that the balance of considerations favors dismissing this claim without prejudice. In this way, Plaintiff may pursue that claim in State court should he so choose. Second, the Ohio courts should decide questions about the Ohio Constitution, not federal courts. Accordingly, the Court **DISMISSES WIHTOUT PREJDICE** Count V of the first amended complaint.

## CONCLUSION

Much of Mr. Zupko's complaint derives from his housing situation and other consequences of public availability of his status as a sex offender. For example, his new landlord learned of his status through the public availability of the Ohio sex offender registry. But those consequences are not the product of State action. They

derive entirely from the decisions and actions of private persons. The Constitutions does not protect against such consequences. Instead, it safeguards an individual's liberty against the State or the national government. On that score, in the Court's view, Mr. Zupko does not allege a violation of his constitutional rights.

For all the foregoing reasons, the Court **OVERRULES** Plaintiff's objections (ECF No. 10), **DENIES** Plaintiff's motion to stay (ECF No. 10), **GRANTS IN PART** Defendant's motion to dismiss, and **DISMISSES WITHOUT PREJUDICE** Plaintiff's claim in Count V of the first amended complaint for violation of the Ohio Constitution.

**SO ORDERED.**

Dated: September 4, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio